DEAN WITTER AND COMPANY, INC.,
Plaintiff-Counter Defendant-Appellant,

v.

TIGER TAIL FARMS, INC., and James
H. Ozment, Jr., Defendants-Counter
Plaintiffs-Appellees.

Supreme Court of Tennessee,
at Jackson.

July 16, 1984.

R.A. Ashley, Dyersburg, for plaintiff-counter defendant-appellant; Ashley & Ashley, Dyersburg, of counsel.

John W. Palmer, Dyersburg, for defendants-counter plaintiffs-appellees; Palmer, Palmer & Wilkerson, Dyersburg, of counsel.

## OPINION

BROCK, Justice.

Tiger Tail Farms, Inc., and James H. Ozment, defendants-appellees, through their brokers, Dean Witter and Company, Inc., plaintiffs-appellants, engaged in the trading of soybean futures on the commodities exchange market at the Chicago Board of Trade. This trading was done pursuant to a contract entered into between the brokers and Tiger Tail and Ozment and pursuant to the regulations of the Chicago Board of Trade. This trading arrangement, and the account of Tiger Tail and Ozment, was terminated by Dean Witter when the latter determined that Tiger Tail had failed to maintain the margins required by both the regulations of the Chicago Board of Trade and by the contract between the plaintiff and defendants.

After closing out Tiger Tail's account and after allowing all proper credits to Tiger Tail, Dean Witter determined that Tiger Tail was indebted to it in the sum of $155,779.50, representing the trading loss in the account. Dean Witter sued Tiger Tail for this sum, both on open account and on a promissory note that Tiger Tail had given in response to a margin call.

Tiger Tail filed an answer and a counterclaim in which it was not denied that the account deficit of $155,779.50 was owed but insisted that Dean Witter wrongfully closed Tiger Tail's account, in that, the closing was done without adequate notice to Tiger Tail and that this premature closing of its account had caused Tiger Tail to incur damages that more than offset the deficiency in the account for which Dean Witter filed the original complaint.

The case was tried before a jury which returned a verdict in favor of defendant Tiger Tail on the original complaint filed by Dean Witter and awarded damages in the sum of $300,000.00 on the counterclaim filed by Tiger Tail. Acting upon Dean Witter's Motion for Judgment Notwithstanding the Verdict, the trial judge set aside the $300,000.00 verdict in favor of Tiger Tail on its countercomplaint, holding that Tiger Tail had failed to mitigate damages, so that, the award of any damages was too speculative. However, the trial judge overruled Dean Witter's Motion for Judgment Notwithstanding the Verdict denying a recovery upon its original complaint.

Dean Witter appealed the denial of its Motion for Judgment Notwithstanding the Verdict and Tiger Tail appealed the judgment setting aside its jury verdict on the counterclaim. The Court of Appeals affirmed the jury verdict in favor of Tiger Tail on the original action but reversed the judgment n.o.v. on the counterclaim and

remanded the countercomplaint to the trial court for a new trial. We granted Dean Witter's application for discretionary appeal.

Most of the salient facts of this dispute are stated in the opinion of the Court of Appeals as follows:

"The defendant (Tiger Tail Farms) entered into a written agreement with the plaintiff (Dean Witter) for the trading of commodity futures. The terms and provisions of the agreement were the same as or similar to those used throughout the industry. Mr. Ozment conducted the trades for the defendant. The agreement provided that transactions were subject to the rules, regulations, customs, and usages of the exchange where the transactions occurred which, in this case, was the Chicago Board of Trade. It was provided that the agreement could not be altered or modified unless the modification or alteration was written and signed by a representative of the plaintiff. It further provided that the plaintiff had the right to close out the defendant's account and position in the market if the plaintiff deemed such actions necessary for its protection.

"The agreement required the defendant to maintain adequate margins for its accounts. By its terms this customer's agreement was governed by the law of the state of New York.

"The parties traded for several months before the occurrence of events which gave rise to this case. On July 24, 1975, defendant had sold short, i.e., he had sold for future delivery 500,000 bushels of beans.[1] The market went up the limit, which under the rules of the Chicago Board of Trade at the time, was twenty cents ($0.20) per bushel. At the close of the market day on Thursday, July 24, the defendant had a market deficiency of more than $76,000.00. On the following day, Friday, July 25, 1975, the market again went up the limit, increasing the deficiency by an additional $100,-000.00. A further margin call was made, and plaintiff's representative made an ap-

pointment with the defendant, Ozment, to meet him at his office in Dyersburg, Tennessee, on Monday, July 28, 1975.

"On Monday, July 28, Mr. Ozment was not in his office when plaintiff's representative arrived, but he had left a note that he would return at approximately 10:30 a.m. Mr. Ozment did arrive at his office at about the time stated, but by 11:00 a.m. the market had gone up the limit again and had closed so that no one could be taken out of the market at the time. This resulted in an additional loss of $100,000.00 to Tiger Tail Farms. To cover the margin call on this date, Mr. Ozment, for Tiger Tail, gave plaintiff's representative (a) a check for $75,000.00, (b) a ten-day note for $300,-000.00, and (c) Mr. Ozment's personal guaranty of the account. It was Ozment's understanding that this action would meet the margin requirement during a ten-day period unless it exceeded the $300,000.00.

"The plaintiff's representative, Robert Bickers, returned to Memphis on Monday, July 28, with the check, the note, and the guaranty, but after discussions with officials of Dean Witter he returned to Dyersburg on Tuesday morning, July 29, 1975, arriving shortly before the market opened on that date. At that time the defendant was properly margined because plaintiff had credited defendant with a $75,000.00 check and the $300,000.00 note. Since the market had gone up the limit for three consecutive days, however, Rules 1822 and 1823 of the Chicago Board of Trade went into effect which provided that the margin requirements for soybeans automatically increased on the fourth trading day. The market opened $0.16 higher than the previous day's close, thus creating a margin deficit of approximately $57,000.00. At 9:34 a.m. on July 29, just minutes after the market opened, Dean Witter made a margin call on Tiger Tail which was refused by Mr. Ozment. Dean Witter then closed out Tiger Tail in the market, resulting in a margin deficit of $155,779.50 after giving all due credits.

---

1. One who sells "short" sells a future commodity with the hope that prices will go down before he has to produce the commodity, or money, on the delivery date.

"Tiger Tail maintains that the account was wrongfully closed because (a) it was the custom and practice to make margin calls at the end of the trading day, not during trading; (b) Mr. Bickers arrived at Tiger Tail's office on Tuesday, July 29, without advance notice, at which time the defendant was properly margined, then made an immediate margin call when the market opened; (c) Rule 209 of the Chicago Board of Trade required that the broker must give a reasonable time after demand for a customer to meet a margin call and, absent unusual circumstances, one hour shall be deemed a reasonable time." Opinion, Court of Appeals.

The facts set out in the quotation are supported by the evidence.

■ It is firmly established that at the time Dean Witter closed the account of Tiger Tail on July 29, 1975, Tiger Tail was undermargined in the approximate amount of $56,000.00. Clearly, this gave Dean Witter the right to close out the account of Tiger Tail under its written trading agreement with Tiger Tail and under the law. That right is not debatable, but, whether or not Dean Witter failed to give Tiger Tail a reasonable time within which to meet its margin requirements is, under the proof, debatable in this case. That issue, i.e., adequacy of notice to Tiger Tail, was a jury issue.

■ It is also established without question in the record that at the time Tiger Tail's position was closed out of the market Tiger Tail had an account balance owing to Dean Witter in the sum of $155,779.50. Both the trial court and the Court of Appeals have clearly erred in sustaining the verdict of the jury denying a recovery to Dean Witter for that amount.

Since we are dealing here with a short sale of soybeans we pause to review the nature of such a transaction. A well stated explanation is given in 12 C.J.S. *Brokers* § 72 (1980) as follows:

"In a 'short sale,' a customer undertakes to sell stock (or other commodities) which he does not own, by acquiring and deliv-

ering it at a future date, and the broker must execute the transaction by borrowing stock, and close it in accordance with the customer's orders, unless the margin is not kept good, or the customer repudiates the sale, in which case the broker may close the transaction at once by buying stock to cover the sale.

\* \* \* \* \* \*

"A sale of stock 'short' means a sale of stock which the seller does not at the time possess, but which, by a future date or time agreed on for its delivery to the purchaser under the terms of the contract, seller must in some way acquire for the purpose for such delivery. In such a sale the broker makes delivery of the bonds or stock, charging the price thereof to the customer, and the account is carried until the customer orders the broker to repurchase the bonds or stock, and an adjustment is made between the selling and the purchasing price.

"It is the duty of a broker to furnish stock for delivery by borrowing from other brokers until the transaction is closed, and the duty of the client is to furnish sufficient margin to the broker, to protect him from loss due to a rise in the market before such shares are returned.

\* \* \* \* \* \*

"Where a broker agrees, for a commission and on a deposit of a stipulated margin, to make a short sale for a client, he is bound to carry the stock for a reasonable time, as long as the margin remains intact; but, if the margin is not kept good, he may, on demand and notice, close the transaction by buying to cover the sale." 12 C.J.S. at 219.

■ We hold that the record establishes conclusively that Dean Witter had a right to demand additional margin from Tiger Tail on July 29, 1975, at the time it closed Tiger Tail's trading account.

We consider now the issue whether or not Dean Witter acted precipitously in closing Tiger Tail out of the market without giving the latter a reasonable time within

which to produce the additional margin required by the rules of the Chicago Board of Trade and by the agreement between Dean Witter and Tiger Tail.

Dean Witter's position, supported by the testimony of its witnesses, is that when it demanded additional margin from Tiger Tail at the opening of the market on July 29, 1975, Mr. Ozment, for Tiger Tail, stated his intention that he would not produce any additional margin until the close of the market on that trading day. On the other hand, Tiger Tail's witnesses insist that under the course of dealing between these parties it had been customary to wait until the end of the trading day to demand additional margin, in which event, Tiger Tail would have until the opening of the market the next trading day within which to provide the additional margin required and, further, that Rule 209 of the Chicago Board of Trade required that a broker must give a reasonable time after demand for a customer to meet a margin call and that, absent unusual circumstances, one hour would be deemed to constitute a reasonable time; whereas, in the instant case Dean Witter allowed Tiger no more than 15 minutes between the demand for additional margin on the morning of July 29 and the time Dean Witter closed out Tiger Tail's account.

■ These conflicting positions being supported by some evidence in the record, we hold that the issue whether or not Dean Witter allowed Tiger Tail a reasonable time within which to produce the additional required margin before closing out Tiger Tail's account was an issue properly to be determined by the jury. Accordingly, we hold that the trial court did not err in submitting this issue to the jury for its decision. The verdict of the jury on this issue was in favor of Tiger Tail Farms and is sustainable by material evidence in the record, but, it does not follow that the verdict (1) denying a recovery to Dean Witter for $155,779.50 on its original complaint or (2) its award of $300,000.00 to Tiger Tail Farms against Dean Witter on the counter-complaint are sustainable. As we have already stated, the verdict and judgment against Dean Witter on its original complaint is not sustainable and must be reversed; judgment n.o.v. in favor of Dean Witter on the original complaint must be granted.

We consider now the validity of the verdict and judgment on the countercomplaint for $300,000.00 in favor of Tiger Tail Farms against Dean Witter. Although the jury, as we have stated, was justified in finding against Dean Witter on the question whether or not it allowed Tiger Tail Farms a reasonable time within which to meet the additional margin call we must look further to see if that breach of duty resulted in any damages to Tiger Tail and, if so, the amount thereof.

■ The general rule is that the measure of damages in the case of an unauthorized covering of a short sale, is the difference between the price at which the stock or other securities was bought in by the broker at the unauthorized coverage and the lowest market price within a reasonable time after the coverage purchase, less the broker's commission. 12 C.J.S. *Brokers* § 87(a) (1980). But, the parties have agreed in this case that the rights shall be determined by the law of New York, so we turn to the case law of that state to ascertain the controlling rule. There, we find that the proper measure of damages in the case of an unauthorized "coverage" of a "short sale" is the difference between the price at which the stock or other security or commodity was bought in by the broker at the unauthorized "coverage" and the lowest market price within a reasonable time after the "covering" purchase. *Stone v. Allen*, 161 Misc. 100, 291 N.Y.S. 330, 332 (1936); *Raisis v. Eisele & King, Libaire, Stout & Co.*, 20 A.D.2d 392, 246 N.Y.S.2d 942, 944 (1964), *aff'd* 16 N.Y.2d 557, 260 N.Y.S.2d 834, 208 N.E.2d 779 (1965); *Barber v. Ellingwood*, 144 App.Div. 512, 129 N.Y.S. 414 (1911). We quote a portion of the opinion from the *Raisis* case as follows:

"Furthermore, plaintiff failed to prove any damage as a result of this purchase. The rule of damage for the unauthorized

covering of a short sale was correctly stated by the court as the difference between the price at which the stock was bought in and its lowest market price within a reasonable time thereafter (*Barber v. Ellingwood,* 144 App.Div. 512, 129 N.Y.S. 414). The court, however, found 30 days to be a reasonable period and took the average of the high and low bids for this period as the standard of calculating plaintiff's loss. For two reasons this is erroneous. It is not an average price which governs but the lowest market price. The theory is that where the broker wrongfully buys the customer in, the latter's damage is the difference between what the purchase cost him and the price at which he could have covered the transaction had it been left open. Secondly, 30 days was not a reasonable period. The measure of reasonableness depends on the immediate situation presented. While the rule is the converse of the situation where the broker sells out a customer with a long position, the situation especially with regard to the urgency of the transaction is quite different in degree. The lender of the stock can at any time demand the return of the stock and thereby force a short seller to buy in or procure another loan. Here a situation had developed that made such a possibility increasingly dangerous—so much so that the Exchange, as seen, had ruled upon it. The stock was rising, and in large amounts. It was evident that borrowers of the stock were in a very precarious position and that delay could cause large losses. Under such circumstances, a far shorter period is indicated. As the stock continued to mount for the balance of the trading day and the day following, there was no showing that plaintiff, if left to his own judgment, could have covered the stock at a more advantageous period." 246 N.Y.S.2d at 944–45.

■ Under this New York rule of damages, which governs in this case, Tiger Tail has failed to offer any evidence that it sustained any injury or damage by reason of Dean Witter's failure to allow Tiger Tail

a reasonable time within which to come forward with the additional required margin before buying in Tiger Tail's account and closing it out. Tiger Tail made no attempt to re-enter the market; there is no evidence that the market price of beans went down within a reasonable time after the account was closed. The result is that Tiger Tail is entitled to recover no more than nominal damages on its countercomplaint. *Dennett v. Wilmerding,* 291 Mass. 264, 196 N.E. 860 (1935); 12 Am.Jur.2d *Brokers* § 154 (1964).

Therefore, the jury's verdict in favor of counterplaintiff, Tiger Tail Farms, Inc., against counterdefendant, Dean Witter, Inc., for the sum of $300,000.00 or for any amount of more than nominal damages, is unsupported by the evidence and was properly vacated by the trial judge.

■ Moreover, there being no evidence to support a verdict for anything but nominal damages in favor of Tiger Tail Farms, Inc., the trial judge acted correctly in granting judgment n.o.v. as provided by Rule 50.02, Tennessee Rules of Civil Procedure. In *Jones v. Telegraph Co.,* 101 Tenn. 442, 47 S.W. 699 (1898), this Court considered the proper procedure to allow in a case in which it had reversed a verdict and judgment in favor of the defendant but in which the plaintiff was entitled to nominal damages. There the Court said:

"The testimony of defendant shows conclusively that it breached its contract, in that it did not exercise that degree of diligence devolved upon it by the law. By that breach the defendant inevitably becomes liable for some damages. The testimony for the plaintiff discloses, with equal certainty, that he sustained only nominal damages. Then the defendant is liable for nominal damages, no more, no less. This being so, nothing could be accomplished to the advantage of either party by a remand and new trial. The plaintiff, in no event, can be entitled to more than nominal damages; the defendant in any event, is liable for that much. No other result, in whatever Court,

would meet the demands of the law upon the conceded facts of the case; and if a different result were reached in the lower Court upon a remand and new trial, this Court, upon another appeal in error, would be compelled to reverse again. "Such being true, this Court directs that a judgment be now entered here in favor of the plaintiff, and against the defendant for one dollar and all costs." 101 Tenn. at 444, 47 S.W. 699.

We hold, therefore, that the Court of Appeals erred in reversing the judgment n.o.v. entered by the trial court in favor of the cross-defendant, Dean Witter, Inc., and in remanding the counterclaim to the trial court for a new trial. As this Court did in *Jones v. Telegraph Company, supra,* we direct entry of a judgment in favor of Tiger Tail Farms against Dean Witter, Inc., for $1.00 as nominal damages on the counterclaim.

In summary, the judgment of this Court is as follows:

(1) On the original complaint, the judgment of the Court of Appeals and that of the trial court are reversed and, pursuant to Rule 50.02 of Tennessee Rules of Civil Procedure, a judgment notwithstanding the verdict is rendered in favor of Dean Witter, Inc., against Tiger Tail Farms, Inc., and James H. Ozment, Jr., for the sum of $155,779.50 plus an additional 10 percent of that amount for attorney's fees as provided in the promissory note sued upon and all costs incurred in the trial court, the Court of Appeals and this Court attributable to the proceedings upon the original complaint.

(2) On the counterclaim, the judgment of the Court of Appeals is reversed and the judgment n.o.v. rendered by the trial court in favor of the counterdefendant, Dean Witter, Inc., under Rule 50.02, Tennessee Rules of Civil Procedure, is affirmed except that it shall be amended to award nominal damages in favor of Tiger Tail Farms, Inc., against Dean Witter, Inc., in the sum of $1.00 and all costs incurred in the trial court, the Court of Appeals and

this Court which have accrued incident to the proceedings on the counterclaim.

COOPER, C.J., and FONES, HARBISON and DROWOTA, JJ., concur.